# CHARLESTON.

HUFF v. EQUITABLE LIFE INSURANCE COMPANY OF
DISTRICT OF COLUMBIA.

Submitted January 21, 1919.   Decided January 28, 1919.

APPEAL AND ERROR—*Verdict on Conflicting Evidence—Review.*

> In an action upon an insurance policy containing the condition that no obligation is assumed by the insurer unless at the date thereof the insured is, ''in sound health,'' which is treated by the defendant as a representation falsely and fraudulently made, and the evidence is conflicting as to the condition of the insured's health at the time he was insured, and also as to the time he was examined and advised by a physician that he had chronic nephritis, some witnesses fixing the time before and others after the date of the policy, a verdict based on such conflicting evidence will not be disturbed.

Error to Circuit Court, Ohio County.

Action by Susie Huff against Equitable Life Insurance Company of District of Columbia.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Geo. C. Beneke* and *Jno. J. Coniff,* for plaintiff in error.

WILLIAMS, JUDGE:

To a judgment of the circuit court of Ohio county in favor of plaintiff, defendant obtained this writ of error and assigns as error the overruling of its motion to set aside the verdict of the jury as contrary to the law and the evidence, as disclosed in the trial of the case, and grant it a new trial. Plaintiff is the beneficiary in a life insurance policy issued

to Arthur Huff on the 13th day of August, 1917, by the defendant. The insured died the 3rd day of the following December, and this suit is brought to recover the amount due under the policy.

The defense is based on the following provision of the policy: "No obligation is assumed by the Company prior to the date hereof, nor unless on said date the Insured is alive and in sound health." The defendant contends that the record shows that the insured knew at the time he took out the policy he was not in sound health, but was afflicted with chronic nephritis or Bright's disease and concealed the facts from its agent, and, therefore, obtained the policy through fraud and misrepresentations.

J. H. Jenkins, superintendent of the defendant company, testified that, where the amount of the policy was less than $300.00, no physical examination is made of the applicant, but that he is simply asked a number of questions as to the condition of his health by the company's physician. Dr. R. L. Devereux says he went to Huff's house and filled out the inspection blank from answers made to him by the insured, and that he answered "No" to the question as to whether he suffered from certain diseases, including kidney diseases, and that he reported him as a good risk. This inspection took place August 5, 1917. Dr. C. J. Ryan testified that he had been called in to see the insured July 23, 1917, and the next day examined a specimen of his urine and found him to be suffering with chronic nephritis, commonly known as Bright's disease; that he treated him up to the 16th of August, and told him as near as he could what his trouble was, but didn't believe he realized how serious it was. The physician who prescribed for deceased on the 26th of November, during his illness, in his certificate of death, gave acute nephritis and valvular heart leisons as the cause of death.

Plaintiff testified that at the time her husband took out the policy he was working at the Wheeling Mold & Foundry Company, and as far as she knew there wasn't anything the matter with him. She says it was the last of August when Dr. Ryan was called; that there wasn't anything the matter

with her husband when he went to Chattanooga, Tennessee, in November. Luther Huff, brother of deceased, says he saw him nearly every day and no physician was called to see him prior to the 13th of August, 1917; that he first took sick along the latter part of August; that he was working right along in the foundry at the time he was insured; and that he knew when he took sick and it was not before he was insured. Warner Carrothers, another witness, says he knew the insured and boarded with him during the month of August, 1917; that he knew when he was insured in the defendant company and that he was then working in the foundry; that he never heard him complain before that time of being sick; that he looked to be healthy and all right; and that he did not take sick until after he was insured, but says he was sick along in October and November. Jessie Haley, another witness for plaintiff, says she knew the insured well for ten or eleven years and, as she expressed it, "he appeared to be just the picture of health; he was a strong, healthy, portly looking man." Says she knew when he took the policy. This witness lived in the same house with deceased and says she knew nothing of his being sick prior to the 13th of August.

There is a conflict in the testimony as to when Dr. Ryan visited the insured and informed him that he had chronic nephritis. He places the time as the 23rd of July. But other witnesses fix the time as the latter part of August, after the policy was written. There is also some apparent conflict in defendant's own evidence. The doctor who certified the death of deceased stated the cause thereof to be acute nephritis, whereas Dr. Ryan says he was suffering from chronic nephritis in July, nearly a month before he was insured. The evidence, therefore, presented a question of fact to be decided by the jury; and the court has no right to invade its province and reverse its finding if there is sufficient evidence to support it, even though the court, sitting as a jury, might have found otherwise.

As appears from the instructions to the jury, given on behalf of both the plaintiff and the defendant, of which no complaint was made, both parties tried the case on the same theory of the law applicable thereto. For the plaintiff the

jury were told that, if they believed from the evidence deceased answered truly, and to the best of his knowledge and belief, the questions propounded to him at the time of his application for insurance, they should find for the plaintiff. On the other hand, the jury were instructed, at the request of the defendant, that if they believed deceased was suffering from chronic nephritis or Bright's disease immediately before and after the issuance of said policy, and had knowledge of such disease at the time of his examination, and that his answers to the questions were untrue "and made with the knowledge of his own conditions," they must find for the defendant. Also, that if they believe, at the time of the delivery of the policy, deceased was "knowingly suffering from nephritis, or Bright's disease, which, if known to the defendant, would have caused the rejection of the risk, then the failure to communicate it to the company was a fraud upon the company," and their verdict should be for the defendant.

The theory upon which the case was tried renders it unnecessary for us to determine whether or not the condition in the policy, above quoted and relied on to defeat recovery, was a representation or a warranty. The instructions given at defendant's request show that it treated it as a representation and sought to prove that it was knowingly false and fraudulent. It cannot now complain, even if, properly interpreted, the condition should be held to be an absolute warranty, a question we do not decide.

It was for the jury to say, upon the conflicting evidence, whether insured died of chronic or of acute nephritis; and whether, if he had chronic nephritis, he knew it at the time he was insured. Recoveries from acute nephritis are frequent, while recoveries from chronic nephritis are seldom.

Finding no error we affirm the judgment.

*Affirmed.*